UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RELIABLE MONEY ORDER, INC.,
individually and as the representative of
a class of similarly situated persons,

        Plaintiff,

  v.                                                                          Case No. 10-C-242

MCKNIGHT SALES COMPANY, INC.,

        Defendant.

**DECISION AND ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL, AND DENYING AS MOOT DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY**

On February 11, 2010, the plaintiff, Reliable Money Order, Inc. ("Reliable"), filed a class-action complaint in the Circuit Court of Milwaukee County, Wisconsin, alleging *inter alia* a violation of the Telephone Consumer Protection Act ("TCPA") against the defendant, McKnight Sales Company, Inc. ("McKnight Sales"). McKnight Sales removed the action to federal court, where the parties consented to magistrate judge jurisdiction. On June 20, 2011, McKnight Sales filed a motion for summary judgment, arguing that there was no evidence that it had authorized the fax broadcasting at issue.

On July 1, 2011, Reliable filed a motion for class certification. After extensive briefing, on March 30, 2012, the court granted Reliable's motion, certifying the following class: "All persons who were successfully sent a facsimile on April 6, 2006, or April 7, 2006, offering '20% OFF Cover of Magazines' and '30% OFF Cover of Books' from MSC of Pittsburgh, PA." (ECF No. 60.) McKnight Sales appealed, but on January 9, 2013, the Seventh Circuit affirmed the court's order. When the time

for class members to opt out elapsed, on May 28, 2013, the court denied McKnight Sales's motion for summary judgment, finding that there was a genuine issue of material fact regarding authorization. (ECF No. 100.)

The case was tried to a jury from September 16 to September 19, 2013. At the close of all evidence at trial, the court denied Reliable's oral motion for directed verdict and judgment as a matter of law. (ECF No. 163, Tr. 397-402.) Thereafter, on September 19, 2013, the jury returned a special verdict finding that Reliable had not proven "authorization," as defined in the jury instructions. The court therefore entered judgment for McKnight Sales on the verdict. (ECF No. 158.)

On October 17, 2013, Reliable filed a "Renewed Motion for Judgment As a Matter of Law or, in the Alternative, Motion for New Trial" pursuant to Federal Rules of Civil Procedure 50(b) and 59(a). On November 15, 2013, McKnight Sales filed a "Motion for Leave to File Supplemental Authority" in opposition to Reliable's post-trial motion. Reliable's motion is now fully briefed and ready for resolution. For the following reasons, Reliable's motion will be denied. As a result, McKnight Sales's motion will be denied as moot.

**I. FACTS**

Before trial, Reliable submitted proposed jury instructions, including "Proposed Jury Instruction No. 30," which read as follows:

> For purposes of this case, the terms "authorization" and "authorized" mean that Defendant engaged in activity that would reasonably lead the public to believe that the fax broadcaster was Defendant's representative in issuing the broadcast. Such activity on the part of Defendant could include, for example, Defendant allowing the fax broadcaster access to information that normally would be within Defendant's exclusive control, including access to detailed information regarding the nature and pricing of Defendant's products and services, as well as the authority of the broadcaster to use Defendant's name, trademark and service mark, or evidence that Defendant approved, wrote, or reviewed the broadcaster's telemarketing scripts. Evidence of these kinds of relationships, if proven in the evidence, may be sufficient to place upon Defendant the burden of demonstrating that a reasonable consumer
2

would not sensibly assume that the broadcaster was acting as Defendant's authorized agent in issuing the fax broadcast.

(ECF No. 121-4 at 33.) During trial, Reliable submitted "Proposed Jury Instruction No. 33," which reads as follows: "For purposes of these instructions and your verdict, the terms 'authorization' and 'authorized' refer only to the issuance of a fax broadcast advertising Defendant's goods and services, not to the specific targets, intended or unintended, of such fax broadcast." (ECF No. 149-1.)

As previously discussed, at the close of all evidence at trial, Reliable moved for a directed verdict and judgment as a matter of law. (ECF No. 163, Tr. 397.) And finally, during the court's subsequent jury instruction conference, Reliable argued that McKnight Sales bore the burden of disproving "authorization," and that the term "authorization" should actually be jettisoned in favor of the words "on behalf of." (ECF No. 164, Tr. 410-13.)

The court largely rejected these arguments[1] and instructed the jury on the TCPA claim as follows:

> Reliable and the class members claim that McKnight Sales violated the Telephone Consumer Protection Act, or the "TCPA." The TCPA makes it unlawful for "any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." The entity or entities on whose behalf facsimiles are sent are ultimately liable for compliance with the rule, if the sending was authorized.
>
> The parties have stipulated that the fax at issue is an "advertisement" and that McKnight Sales is a "person," as those terms are defined in the TCPA.
>
> So, to succeed on its claim, Reliable must prove by a preponderance of the evidence that:
>
> 1. McKnight Sales "authorized" the sending of the subject fax broadcast; AND

---

[1] All references to "the subject fax" were changed to "the subject fax *broadcast*" to alleviate Reliable's concerns similar to those underlying the submission of "Proposed Jury Instruction No. 33." (ECF No. 164, Tr. 414-15.)

3

> 2. B2B or Macaw "successfully sent" the subject fax broadcast.
>
> As relevant here, "authorized" means that McKnight Sr.'s written words, spoken words, or conduct reasonably caused B2B or Macaw to believe that McKnight Sr. approved the sending of the subject fax broadcast.
>
> Also as relevant here, "successfully sent" means that the subject fax broadcast was delivered to receiving fax machines. In order to prove that the faxes were "successfully sent," the plaintiff does not have to prove that the faxes were actually seen or printed, or would not have been truncated if printed.

(ECF No. 151 at 7-8; ECF No. 164, Tr. 430-31.)

Thereafter, in a special verdict, the jury found that, although Reliable *had* "proven by a preponderance of the evidence that B2B or Macaw 'successfully sent' the subject fax broadcast," Reliable had *not* "proven by a preponderance of the evidence that McKnight Sales 'authorized' the sending of the subject fax broadcast." (ECF No. 155.)

## II.  LEGAL STANDARD

Reliable seeks relief pursuant to Federal Rules of Civil Procedure 50(b) and 59(a). Under Rule 50(b), which addresses renewed motions for judgment as a matter of law, the court must "view the evidence presented in the light most favorable to [the nonmovant] and draw all reasonable inferences in [its] favor." *Waters v. City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009). Judgment as a matter of law may be granted "only if no reasonable juror could have found in favor of [the nonmovant]." *Id.*

Under Rule 59(a), which discusses grounds for a new trial, the court looks to whether "the verdict is against the weight of evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Westchester Fire Ins. Co. v. Gen. Star Indem. Co.*, 183 F.3d 578, 582 (7th Cir. 1999) (internal quotation marks omitted). "[O]n a motion for a new trial based on improper instructions to the jury, [the court] ask[s] whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *Alcala v.*

4

*Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th Cir. 2007) (internal quotation marks omitted). The motion should be granted "when the instructions misstate the law or fail to convey the relevant legal principles in full and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007) (internal quotation marks omitted).

## III. DISCUSSION

Reliable primarily argues that the court misinterpreted the substantive law regarding "authorization" under the TCPA. This misinterpretation, Reliable contends, led the court to erroneously reject Reliable's motion for judgment as a matter of law as well as its proposed jury instructions defining "authorization."[2]

The TCPA makes it unlawful "to send, to a telephone facsimile machine, an unsolicited advertisement" unless an exception applies. 47 U.S.C. § 227(b)(1)©; *see also* 47 C.F.R. § 64.1200(a)(4). The Federal Communications Commission ("FCC"), which has authority to promulgate regulations implementing the TCPA, *see* 47 U.S.C. § 227(b)(2), has long held that "the entity or entities *on whose behalf* facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12407 (Aug. 7, 1995) (emphasis added); *see also* 47 C.F.R. § 64.1200(f)(10) ("The term sender for purposes of paragraph (a)(4) of this section means the person or entity *on whose behalf* a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.") (emphasis added).

More recently, the FCC has explained that "[s]tandard dictionary definitions of the phrase 'on behalf of' include, among other things, 'in the interest of,' 'as a representative of,' and 'for the benefit

---

[2] Reliable does not challenge the instructions defining "successfully sent." (Pltf. Br. at 6 n.1.)

5

of'—concepts that easily can be read to encompass common law agency principles." *In re Dish Network, LLC*, 28 F.C.C.R. 6574, 6585 (May 9, 2013). Accordingly, the FCC ruled that "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227© that are committed by third-party telemarketers." *Id.* at 6574. Such agency principles include the concepts of actual authority, apparent authority, and ratification. *Id.* at 6586-87; *see Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 4495221, at *3 (N.D. Ill. Aug. 21, 2013).[3]

At paragraph 46 of *In re Dish*, the FCC attempted to "provide guidance in this area," by including "illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations." *Id.* at 6592. At the end of paragraph 46, the FCC opined that, "[a]t a minimum, evidence of these kinds of relationships . . . should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6592-93. Reliable's "Proposed Jury Instruction No. 30" tracked the language of paragraph 46. Reliable also argued that, pursuant to paragraph 46, McKnight Sales bore the burden of disproving "authorization." For several reasons, however, paragraph 46 is inapposite.

---

[3] Reliable cites *Addison Automatics, Inc. v. RTC Group, Inc.*, No. 12-C-9869, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013), for the proposition that authorization is not required under the TCPA. But the court in *Addison Automatics* did not discuss *In re Dish*, which Reliable submits as binding authority. *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2013) (finding *In re Dish* controlling in TCPA faxing case despite *Addison Automatics*). As previously discussed, in *In re Dish*, the FCC clearly equated "on behalf of" liability with agency principles. It also expressly found that "an action taken for the benefit of a seller by a third-party retailer, without more, is [*not*] sufficient to trigger the liability of a seller under . . . either section 227© or section 227(b)." 28 F.C.C.R. at 6593 (emphasis added).

6

First, paragraph 46 of *In re Dish* merely provides "*illustrative examples* of evidence that *may* demonstrate that the telemarketer is the seller's authorized representative." *Id.* at 6592 (emphasis added). Accordingly, the examples are dicta. *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430, at *5 (N.D. Ill. Sept. 23, 2013); *see also United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (defining "dicta" to include illustrations and analogies or suggestions). The final sentence of paragraph 46—referring to evidence that "*should* be sufficient" to shift the burden of proof to the seller/sender—is similarly nonbinding.[4] *In re Dish*, 28 F.C.C.R. at 6593 (emphasis added).

Second, paragraph 46 discusses "apparent authority." As the FCC recognized in *In re Dish*, "'[a]pparent authority holds a principal accountable for the results of *third-party beliefs* about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal.'" *Id.* at 6586 (quoting Restatement (Third) of Agency § 2.03, cmt. c) (emphasis added); *see also Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998) ("[A]pparent authority is created by the same method as that which creates actual authority, except that the manifestation of the principal is to the third person rather than to the agent."). But Reliable did not present evidence regarding the beliefs of third parties (Reliable and the other class members) about the authority of the agent (B2B/Macaw) to send the fax broadcast. And this was for good reason. After all, Reliable maintained (and the jury was so instructed) that "[i]n order to prove that the faxes were 'successfully sent,' [Reliable did] not have to prove that the faxes were actually seen or printed, or would not have been truncated if printed." (ECF No. 151 at 8; ECF No. 164, Tr. 431.)

---

[4] In its reply brief, Reliable energetically argues that ¶¶ 46-47 of *In re Dish* is not dicta. Indeed, Reliable argues that in *In re Dish* "[t]here is no *dicta*." (Pltf. Reply at 10.) But, even assuming that Reliable is correct, it does not matter. For the reasons set forth below in the body of this decision, the doctrine of apparent authority had no application in this case.

Thus, "apparent authority" had absolutely no application in the case. *C.f. Indem. Ins. Co. of N. Am. v. Midwest Transfer Co. of Ill.*, 184 F.2d 633, 636 (7th Cir. 1950) (remanding to district court where there was "in the record, evidence which, if credited, would support a finding [of] apparent authority").

Rather, Reliable presented evidence of only "actual authority"—that is, evidence regarding *the beliefs of the agent* (B2B/Macaw) based on the manifestations of the principal (McKnight Sales) to the agent (B2B/Macaw). *See* Restatement (Third) of Agency § 2.01 ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."); *see also Moriarty*, 155 F.3d at 866 ("Actual authority 'to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'") (quoting Restatement (Second) of Agency § 26). Thus, there was no error by the court in rejecting Reliable's various proposals based on paragraph 46 of *In re Dish*[5] and instead instructing the jury pursuant to the federal common law of "actual authority."

Nor did the court err in denying Reliable's motion, at the close of all evidence, for a directed verdict and judgment as a matter or law. Unusual circumstances were present in this case, as McKnight Sr.—the only person from McKnight Sales to have communicated with B2B—is deceased, and no one from B2B or Macaw testified as to having first-hand knowledge that McKnight Sr.

---

[5] Reliable also argues that the court should have given its "Proposed Instruction No. 33," which was not based on *In re Dish*, to "inform[] the jury that the authorization issue on which it were being instructed was narrowly confined to the authorization of a fax broadcast of the McKnight advertisement." (Pltf. Br. at 23.) But as previously discussed, the court alleviated this concern by changing all references in the instructions from "the subject fax" to "the subject fax *broadcast*." Any further instruction would have been unnecessary and potentially confusing to the jury.

8

approved the sending of the fax broadcast. So, although there was no dispute that McKnight Sr. communicated with B2B, whether he actually "pulled the trigger" and authorized the fax broadcast turned on what inference the jury would draw from entirely circumstantial evidence. Indeed, Reliable's counsel acknowledged as much when he argued, in closing, as follows:

> [W]hen you look at the back-and-forth between McKnight and B2B leading up to this broadcast, the circumstantial evidence makes it pretty clear that there were communications, most likely oral, most likely between the sales people and Mr. McKnight Sr. that led to Caroline Abraham putting in her client table "authorization granted" and sending the fax broadcast. Common sense and reasonable inferences from circumstantial evidence.

(ECF No. 164, Tr. 450.) Such a situation renders judgment as a matter of law inappropriate.

Moreover, the evidence at trial demonstrated, among other things, that: (1) McKnight Sr. did not follow B2B's instructions for final payment or approval of the fax broadcast; (2) B2B generated a final-payment check that did not contain McKnight Sr.'s signature; (3) contrary to his habit, McKnight Sr. kept no written records of his interactions with B2B; and (4) despite McKnight Sr. telling B2B that he wanted to be involved in choosing fax recipients, the fax broadcast ultimately was received by numerous businesses that McKnight Sales would not have targeted.[6] Additionally, Reliable's case depended heavily on the testimony of Caroline Abraham, and the jury had every right to find her not credible. *See Littlefield v. McGuffey*, 954 F.2d 1337, 1348 (7th Cir. 1992) ("The jury is the trier of fact, charged with determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences."). Simply stated, a reasonable jury certainly could have found that

---

[6] Reliable seems to argue that the latter evidence was irrelevant because it only bore on whether B2B may have violated limiting instructions given by McKnight Sr. regarding permissible targets of the broadcast. The court disagrees. The fact that the fax broadcast was ultimately received by numerous businesses that McKnight Sales would not have targeted, notwithstanding McKnight Sr.'s request to be involved in choosing recipients, made it arguably more likely that McKnight Sr. never "pulled the trigger" at all—that is to say, that he never authorized the sending of the fax broadcast.

9

Reliable had not met its burden of proving "authorization." For all of the foregoing reasons, Reliable's motion will be denied.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's "Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial" be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's "Motion for Leave to File Supplemental Authority" in opposition to the plaintiff's post-trial motion be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 25th day of November 2013, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge